**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-21651-BLOOM/Elfenbein**

MARINA ELIZABETH HENRIQUEZ DE
GONZALEZ,

      Plaintiff,

v.

CREDIT ACCEPTANCE CORPORATION,

      Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS TO SET ASIDE DEFAULT ORDER AND TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon Defendant Credit Acceptance Corporation's ("Credit Acceptance") Motion to Set Aside State Court Order of Default, ECF No. [3], and Motion to Compel Arbitration and Dismiss Claims, ECF No. [6]. Plaintiff filed a Response in Opposition ("Response"), ECF No. [9]. Credit Acceptance filed a Reply in Support ("Reply"), ECF No. [12]. The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Motions are granted.

## I.    BACKGROUND

On December 21, 2025, Plaintiff filed a Statement of Claim against Credit Acceptance in the County Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. ECF No. [1] at 1. Plaintiff asserted claims for alleged violations of the Fair Credit Reporting Act ("FCRA"). *Id*. at 1-2.  On February 20, 2026, Plaintiff served Donna Moch as a registered agent of Credit Acceptance at 1200 S. Pine Island Road, Suite 240, Plantation, Florida, 33324. ECF No. [1-1] at 100. On March 6, 2026, after Credit Acceptance failed to appear at an in-person pre-trial conference, the County Court issued an order of default. *Id*. at 105.

On March 12, 2026, Credit Acceptance removed the case to this Court. *Id*. Thereafter, Credit Acceptance filed its motion to set aside the default order, arguing that Credit Acceptance was not properly served. ECF No. [3] at 3-5. Credit Acceptance also filed a motion seeking to compel arbitration. ECF No. [6]. Credit Acceptance points out that Plaintiff executed a Retail Installment Contract and Security Agreement ("Contract") with Healy Mitsubishi ("Dealer") to buy a 2014 Hyundai Sonata. ECF No. [6], Exhibit A. Credit Acceptance argues the Contract contains a clear and unambiguous arbitration provision, which covers the Plaintiff's claims, is presumptively valid, and is enforceable under the Federal Arbitration Act. *See generally* ECF No. [6].

Plaintiff responds that Credit Acceptance holds inconsistent positions in relying on the February 20, 2025 service date to assert its Notice of Removal was timely filed, while simultaneously challenging the sufficiency of that service. ECF No. [9] at 7. Plaintiff further argues that Credit Acceptance has failed to establish a valid and definite arbitration agreement or Plaintiff's knowing and voluntary consent to arbitration. *Id*. at 4-5. Moreover, Plaintiff contends that her FCRA claims are independent of the Contract. *Id*. at 5.

## II.   LEGAL STANDARD

### A.  Good Cause to Set Aside Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default upon a showing of good cause. "'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (internal quotations omitted). To determine whether good cause exists to set aside a clerk's default, courts consider (1) the timing of the motion; (2) the presence of a meritorious defense; and (3) the degree of prejudice that may occur to the non-defaulting party if relief is granted. *See United*

*States v. One (1) 1980 49 Foot Def. Yacht Lobster Vessel*, 566 F. Supp. 106, 108 (S.D. Fla. 1983). Courts also consider "whether the default was culpable or willful ... and other factors[,] including whether the public interest was implicated [and] whether there was significant financial loss to the defaulting party." *Compania Interamericana Exp.-Imp.*, S.A., 88 F.3d at 951. "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. (citations omitted).

## B. Compel Arbitration

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

3

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

Under Florida law, when presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011); *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

In addition, the Court of Appeals for the Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v.*

*Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Once the movant satisfies its initial burden of showing there is no genuine issue of material fact, then "the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact." *Deal v. Tugalo Gas Co.,* 2021 WL 1049813, at *7 (11th Cir. 2021). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express,* 294 F.3d 1298, 1306-07 (11th Cir. 2002)). In determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

## III. DISCUSSION

### A. Motion to Set Aside Default

Credit Acceptance argues the default should be set aside because it was not properly served. ECF No. [3] at 3. Credit Acceptance's designated registered agent for service of process in Florida

is Corporation Service Company, with a service address of 1201 Hayes Street, Tallahassee, Florida 32301. ECF No. [3-1]. Credit Acceptance notes that Plaintiff served process upon CT Corporation Systems at 1200 South Pine Island Road, Suite 250, Plantation, FL 33324. *Id.*; ECF No. [1-1] at 100. Credit Acceptance further notes that CT Corporation Systems lacked authority to accept service of process on behalf of Credit Acceptance. ECF No. [3-2] ¶ 5. As such, Credit Acceptance only learned of Plaintiff's lawsuit via electronic notice from state court on March 6, 2026, after entry of default. *Id.* ¶ 6.

Credit Acceptance argues that because service of process was not properly perfected, the state court lacked personal jurisdiction over Credit Acceptance, and the order of default must be vacated. ECF No. [3] at 5. Credit Acceptance further argues it has always acted diligently, was neither culpable nor willful in the entry of default, and has meritorious defenses against Plaintiff's FCRA claims. *Id.* Specifically, Credit Acceptance points out that, within six days of learning of the lawsuit, it promptly hired counsel and filed its motion to set aside the order of default. *Id.* Moreover, Credit Acceptance contends the default was neither culpable nor willful because it did not learn of this proceeding until default had already entered. *Id.* Credit Acceptance asserts it has defenses against Plaintiff's FRCA claims including a valid, enforceable arbitration provision and Plaintiff's failure to state an adequate claim. *Id.*

Plaintiff does not address Credit Acceptance's arguments but, instead, argues it is inconsistent for Credit Acceptance to challenge the sufficiency of service and simultaneously rely on the service date to establish the timeliness of its removal order. ECF No. [9] at 7. Plaintiff further argues Defendant clearly had notice of the action, as evidenced by its retention of counsel, removal of the case, and active participation in the litigation. *Id.*

As a preliminary matter, the Court notes that "as a general rule, when a case is removed to federal district court under original jurisdiction the federal court treats everything done in the state court as if it had in fact been done in the federal court." *Salery v. United States*, 373 Fed. Appx. 29, 30 n.1 (11th Cir. 2010). "[A] federal district court may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal." *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11th Cir. 1988). Here, the federal district court is a court of original jurisdiction over Plaintiff's FCRA claims, which were properly removed. Therefore, this Court has the power to set aside the state court order of default.

Furthermore, Credit Acceptance has established that Plaintiff did not properly serve it when she served process upon someone who was not a registered agent of Credit Acceptance at an incorrect address. Because service of process was not perfected, the state court lacked personal jurisdiction over Credit Acceptance, and the order of default must be vacated. *See Smith v. Florida Agric. & Mech. Univ. Bd.*, No. 6:24-CV-457-PGB-RMN, 2024 WL 2880412, at *3 (M.D. Fla. Apr. 10, 2024), report and recommendation adopted sub nom. *Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, No. 6:24-CV-457-PGB-RMN, 2024 WL 2745847 (M.D. Fla. May 29, 2024). Credit Acceptance acted with due diligence and filed its motion to set aside the default just six days after receiving notice of the default. Credit Acceptance appears to have meritorious defenses which should be adjudicated on the merits, and Plaintiff has failed to establish that she would be prejudiced by the removal of the default. Moreover, Credit Acceptance was neither culpable nor willful in the entry of default as it had not been properly served. Therefore, Credit Acceptance's Motion, ECF No. [3], is granted.

### B. Motion to Compel Arbitration

Credit Acceptance argues that a valid written arbitration agreement exists as Plaintiff signed the Contract which expressed agreement to arbitrate disputes with Credit Acceptance. ECF No.

[6] at 7. Credit Acceptance further argues an arbitrable issue exists as Plaintiff's credit transaction clearly involves interstate commerce through the sale of an automobile. *Id*. at 7. Moreover, Credit Acceptance contends that when a contract expressly provides that the transaction involves interstate commerce within the meaning of the FAA, a court must enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract. *Id*. at 10 (citing *Staples v. Money Tree, Inc*. 936 F. Supp. 856, 858 (M.D. Ala. 1996)). Finally, Credit Acceptance asserts that Plaintiff's claims fall within the Arbitration Clause's broad scope. *Id*. Credit Acceptance argues that in construing arbitration clauses, courts have distinguished between "broad" clauses that purport to cover all disputes and "narrow" clauses which limit arbitration to specific types of disputes. *Id*. at 11. Credit Acceptance asserts that the Arbitration Clause in this case is "broad" as it states the following:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

ECF No. [6-1].

Plaintiff does not directly address Credit Acceptance's arguments but argues Credit Acceptance has failed to establish a valid and definite arbitration agreement. ECF No. [9] at 4. Plaintiff contends Credit Acceptance's filings contain material inconsistencies which "prevent [Credit Acceptance] from establishing which agreement governs and whether Plaintiff agreed to arbitration. *Id*. Plaintiff notes that in one filing Credit Acceptance references a contract dated February 2017 and, yet in another, Credit Acceptance alleges a contract dated December 2019. *Id*. Plaintiff does not explain which filings she is referencing, and the Court notes the Arbitration

8

Clause before the Court is from a contract dated February 15, 2017. ECF No. [6-1]. Plaintiff further argues that her FCRA claims arise from inaccurate credit reporting and failure to investigate, not from the enforcement of the contract. *Id*. at 5. Finally, Plaintiff contends that Credit Acceptance has failed to prove knowing and voluntary consent because electronic initials are insufficient to demonstrate a knowing waiver of the right to a judicial forum. *Id*.

Credit Acceptance has attached as an exhibit a Contract which contains Plaintiff's electronic signature and her initials acknowledging the Arbitration Clause. ECF No. [6-1]. Moreover, Credit Acceptance provided a Declaration of its legal assistant, Kyri Cortte, who states "Plaintiff electronically signed the Contract pursuant to a Declaration Acknowledging Electronic Signature Process ("E-Sign Declaration"), which contained Plaintiff's handwritten signature." *Id*. Though Plaintiff argues the electronic initials are insufficient to show she knowingly and voluntarily consented to the Arbitration Clause, she cites no case law or statutory authority to support such a claim.

The Court agrees with Credit Acceptance that the Arbitration Clause is broad. Specifically, the Arbitration Clause states, "A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract. . ." *;* "'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." *Id*. Though Plaintiff argues her claims do not concern the enforcement of the Contract, a review of the Statement of Claim filed in state court demonstrate that Plaintiff's FCRA claims arise over disputes concerning alleged delinquent payments under the Contract. ECF No. [1-1] at 10. As such, the Court finds the Arbitration Clause's language encompasses the dispute because the claims relates to the underlying contractual relationship between the parties. *See Hearn v. Comcast Cable Commc'ns,*

*LLC*, 992 F.3d 1209, 1214 (11th Cir. 2021) (finding Plaintiff's FCRA claim related to a Subscriber Agreement and therefore fell within a broad Arbitration Provision). Plaintiff does not contest that an arbitrable issue exists or that the right to arbitration has been waived. Therefore, the Court finds a written agreement exists between the parties that contains a valid arbitration clause, and further finds the Arbitration Clause covers Plaintiff's claims. As such, Credit Acceptance's Motion, ECF No. [6], is granted.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Credit Acceptance's Motion, **ECF No. [3]**, is **GRANTED**;

2.  The State Court's Order of Default is **VACATED**;

3.  Credit Acceptance's Motion, **ECF No. [6]**, is **GRANTED**;

4.  The parties shall proceed to arbitration pursuant to the Arbitration Clause;

5.  Plaintiff's claims against Defendant are **STAYED** pending arbitration. The parties may file a motion to lift the stay, if necessary, once the arbitration proceedings have concluded.

6.  The Clerk of Court shall **ADMINISTRATIVELY CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 14, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

10